PER CURIAM.
¶1 Melvin Buckholtz challenges the sufficiency of the evidence supporting his conviction following a jury trial for possession of a firearm by a felon. We affirm.
¶2 At trial, a police officer testified that while executing an unrelated search warrant at Buckholtz's residence, officers entered a locked bedroom closet and observed in plain view multiple boxes of ammunition for a 30-30 caliber firearm.[1] The officers also found a locked gun safe inside the closet with a gun case leaning against it. After obtaining another search warrant encompassing guns and ammunition, the officers opened the gun case and discovered a Marlin 30-30 lever action hunting rifle. The officers also found multiple articles of clothing on the closet floor, including one of Buckholtz's neckties. Two BB guns were found in the gun safe.
¶3 After the State rested its case, Buckholtz moved for a directed verdict seeking to dismiss the charge. The circuit court denied the motion, concluding the State had presented evidence from which the jury could reasonably find Buckholtz possessed a firearm.[2]
¶4 Buckholtz subsequently testified in his own defense, and he admitted to being a hunter, and to purchasing the Marlin rifle. However, he claimed that he had not handled the rifle since a 2013 drunk-driving conviction. He claimed that his twelve-year-old son owned the hunting rifle when the police found it, and that his wife kept the hunting rifle in their bedroom closet for safekeeping. He further claimed that he never used the closet and only his wife had a key to the closet. On cross-examination, Buckholtz admitted having thirteen prior convictions.
¶5 At the close of the evidence, Buckholtz renewed his motion for a directed verdict to dismiss the charge. The circuit court again denied the motion. The court instructed the jury that possession "means that the defendant knowingly had actual physical control of a firearm." The court further stated, "An item is also in a person's possession if it is [in] an area over which the person has control and the person intends to exercise control over the item."
¶6 The jury found Buckholtz guilty of possession of a firearm by a felon, as charged. The circuit court withheld sentence and placed Buckholtz on three years' probation. This appeal follows.
¶7 When a party challenges the sufficiency of the evidence, we may not reverse a conviction unless the evidence, viewed most favorably to the State and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. State v. Poellinger , 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). On appeal, as long as one reasonable view of the evidence supports the conviction, it does not matter if another reasonable view of the evidence supports reversal. Id. at 505-07. It is the function of the jury, not of an appellate court, to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences from the facts. Id. at 506. If any possibility exists that the jury could have drawn the appropriate inferences from the evidence at trial to find the requisite guilt, we may not overturn the verdict. Id. at 507.
¶8 Because the parties stipulated that Buckholtz had a prior felony conviction at the time the police found the Marlin rifle, the only element of the offense the State needed to prove at trial was that Buckholtz possessed the firearm. The State can prove possession in one of two ways: it can show that the defendant knowingly had actual physical control of the firearm; or it can show that the firearm was in an area over which the defendant had control, and the defendant intended to exercise control over the firearm. See WIS JI- CRIMINAL 1343 (2016).
¶9 The State's theory of possession in the present case was that the hunting rifle was in an area over which Buckholtz had control, and Buckholtz intended to exercise control over the rifle. That police found the hunting rifle in a locked closet in Buckholtz's bedroom in his own home supports the reasonable inference that Buckholtz had control over the area in which police found the rifle. In addition, police found at least one article of Buckholtz's clothing inside the locked closet not far from the rifle. Multiple boxes of ammunition sat on a shelf in the closet, and the Marlin rifle was leaning against the outside of the gun safe. Moreover, Buckholtz admitted to being a hunter and purchasing the hunting rifle. From this evidence, the jury was entitled to infer Buckholtz intended to exercise control over the hunting rifle, and that he kept the rifle outside the gun safe near multiple boxes of ammunition because he actively used the firearm.
¶10 The jury was entitled to disbelieve Buckholtz's testimony about a lack of access to the closet, particularly since Buckholtz acknowledged having thirteen prior convictions. It is not dispositive that Buckholtz's wife also may have had similar control over the firearm. "If a person exercises control over an item, that item is in his possession, even though another person may also have similar control." WIS JI- CRIMINAL 1343 (2016).
¶11 In this regard, Buckholtz insists that after his drunk-driving conviction, he and his wife planned to eventually give the hunting rifle to their eldest son. Buckholtz argues his wife alone held onto the rifle for this purpose, and his son in fact owned the rifle on the date in question. However, the jury was also entitled to reject that testimony. And even if we assume that Buckholtz had a plan to gift the rifle to his son, the jury was entitled to consider that plan in light of the evidence that police found the firearm in Buckholtz's bedroom closet, and reasonably infer that Buckholtz himself intended to exercise control over the firearm.
¶12 Finally, Buckholtz forwards a policy argument that his conviction, if upheld, will stand for the proposition that a convicted felon cannot live with a gun owner without fear of prosecution. This argument ignores the undisputed facts presented in this particular case. Buckholtz hunted and purchased the hunting rifle, and police found the hunting rifle outside the gun safe in Buckholtz's bedroom closet together with multiple boxes of ammunition and Buckholtz's clothing in plain view near the firearm. This evidence was sufficient to sustain the jury's verdict that Buckholtz himself possessed the firearm here, and represented more than simply a convicted felon living with a gun owner.
¶13 Quite simply, viewing the evidence most favorably to the State, as we must, we cannot say as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. To the contrary, a reasonable view of the evidence in this case supports the jury's conclusion that Buckholtz possessed the firearm, and it does not matter if another reasonable view of the evidence may support reversal.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).

In addition to the numerous 30-30 caliber bullets, the officers also observed in plain view ammunition for .270 caliber and 30-06 caliber weapons. An officer testified there also may have been .308 caliber ammunition "just loose."

The parties had stipulated at trial that Buckholtz had a prior felony conviction at the time the police found the Marlin rifle.